OPINION
PER CURIAM.
Petitioner Zhima Jiata, a native of Tibet and citizen of China, was admitted to the United States on or about August 31, 2005. On April 17, 2006, he was served with a Notice to Appear, which charged that he was removable under Immigration & Nationality Act (“INA”) § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A), as an alien who did not possess a valid entry document. On May 5, 2006, Jiata filed an application for asylum under INA § 208(a), 8 U.S.C. § 1158(a), withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and protection under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.18, claiming persecution based on his Tibetan ethnicity and his Buddhist religion, and he attached to it a personal statement about events that transpired in his Tibetan village in 2004 and 2005.
Jiata conceded that he was removable as charged. At his merits hearing in Immigration Court on October 19, 2006, he testified that he was from Yazhong, a small village in the Lithang District of occupied Tibet. All of the people in his village were, like him, ethnic Tibetans and followers of the Buddhist teachings of His Holiness the Dalai Lama. He testified that his wife, Abang, and their eldest daughter, Luorang Zhema, remained in Yazhong, but that, in 2004, he sent his two younger daughters, Tashi Choezom and Namgyal Wangmo, to India in the company of his elder brother. He did this so that they could study the Tibetan culture and heritage in Dharamsala, the Tibetan community in exile in India.
Because he sent his daughters to school in India, the Chinese police in Yazhong arrested him on December 20, 2004 on charges that he supported the Tibetan government in exile. The police detained him for two weeks at the local police station and questioned him about whether he had political connections with the Dalai Lama in India. When he denied that he had any such connections, they beat him on the back with a rubber stick, hit him in the face, and kicked him in the legs. Jiata testified that the police would not release him until he paid a 5000 RMB fine, which sum he lacked and had to borrow from his wife’s relative. The police released him on January 4, 2005 on the condition that he report to the station every month or face further arrests and fines. The pain he felt from the beatings caused him to consult a local doctor three or four times during the month after he was released from detention. Jiata testified that he left Tibet on August 31, 2005, because he was afraid that he might again face arrest, and he testified that he was afraid to return to Tibet because he might face life imprisonment.
On cross-examination, Jiata was asked whether the Chinese police had been looking for him in Yazhong since he left, and he testified: “At home, I have no contact right now.” App. 177. He admitted, however, that he had contact with his wife, Abang, in Yazhong, through her relative, Lobsang. See id. Asked whether Lob-sang had told him that anyone had been looking for him since he left home, Jiata testified: “I didn’t get any such information.” Id. at 178. Asked why he believed the police even cared about him now, since he had not reported, as required, for over a year, he testified: “I have no information.” Id. at 179. Asked whether he had contact with his daughters in India, Jiata testified that, since his arrival in the United States, he had talked with them by *423 telephone on their school holidays. Id. at 167.
Along with his asylum application and attached statement, Jiata submitted into evidence a copy of the following documents: (a) his passport and visa; (b) his Household Register; (c) his Freedom Movement Book; (d) his Residence ID; (e) a letter from the Dhokham Chushi Grang-druk, Inc., in New York; (f) undated photographs of his family, and a photograph of a Free Tibet demonstration in New York; (g) the affidavit of Kalsang Gyatotsang, from New York; (h) the State Department’s 2005 Country Report for China (including Tibet); (i) the State Department’s 2005 Profile of Asylum Claims and Country Conditions in China; (j) a Washington Post newspaper article on Tibetans in China; (k) a report entitled, “Prisons in non-TAR Tibet;”[1] (l) an internet report from guchusum.org on deaths in Tibet; (m) a 1997 report, entitled “Striking Hard: Torture in Tibet;” (n) a 2000 report entitled, “Torture in Tibet,” submitted to the United Nations Committee Against Torture; and (o) the 2005 Report to Congress on human rights in China.
The Immigration Judge denied relief and ordered Jiata removed to China. The IJ found that Jiata’s testimony compelled an adverse credibility finding due to two material omissions from his application and attached statement: that police demanded that he pay a fine before they would release him from detention, and that his pain from the beatings in detention caused him to seek treatment from a doctor three or four times during the month after his release from detention. The IJ pointed out that Jiata could have, but did not, provide documentary evidence that might have overcome the weaknesses in his case and the discrepancies between his testimony and his application; for example, he could have corroborated his testimony that his daughters attended a Tibetan school in India and he could have corroborated his testimony that he was arrested and detained because his daughters attended the school. He could have provided a statement from his wife to corroborate his arrest on December 20, 2004, and he could have provided a statement from his wife’s relative to corroborate his testimony that the police would not release him until he paid them a fine. The IJ also found that Jiata had failed to prove that he had a well-founded fear of future persecution, in part because of his admission that his wife and all of the other Tibetan Buddhists in Yazhong remained there. The IJ also noted that, despite Jiata’s testimony that he might be imprisoned for life if he returned home, his application contained no mention of the police contacting anyone in his family about him since he left his village. The IJ found that Jiata failed to meet the higher standard required to establish eligibility for withholding of removal, and he also denied Jiata’s CAT claim for lack of evidence.
Jiata appealed to the Board of Immigration Appeals. On March 21, 2008, the Board dismissed his appeal, concluding that the IJ’s credibility determination was not clearly erroneous, 8 C.F.R. § 1003.1(d)(3). The Board agreed with the IJ that material inconsistencies existed between Jiata’s testimony and his asylum application and statement regarding the medical treatment he received after his detention and the fine he was required to pay to secure his release. He also failed to provide readily available corroboration from his daughters and his wife. The Board noted that, although Jiata claimed to have a well-founded fear of persecution, he failed to provide any evidence that his wife or any of his family members have been contacted by police or have experi *424 enced any problems since his departure in August 2005. The Board also agreed with the IJ that Jiata failed to establish that he is more likely than not to be tortured, citing 8 C.F.R. § 1208.16(c)(2).
Jiata did not file a petition for review of the Board’s March 21, 2008 final order. On or about May 12, 2008, he filed a timely motion to reopen with the Board pursuant to 8 C.F.R. § 1003.2(c), explaining that he had recently obtained evidence to substantiate his claim of past persecution. Specifically, he now had an affidavit from his wife and one from his brother-in-law, Lob-sang, attesting to his treatment by the Chinese government in 2004 and 2005. His wife asserted in her statement that the Chinese police have paid her a visit and questioned her about Jiata’s whereabouts, verbally and physically abusing, harassing and intimidating her. She believes that she is still being monitored. Lobsang asserted in his statement that he paid 5000 RMB to secure Jiata’s release from detention on January 4, 2005. In addition, Jiata had evidence to document that his two daughters are bona fide students at the Tibetan SOS Children’s Village. The motion to reopen also relied on the recently issued 2007 State Department Country Report on China.
Jiata claimed that he obtained these statements and documents only recently, and he attached an envelope in which they had arrived, via mail, that was postmarked October 22, 2006, and which, he asserted, demonstrated that they were not available and could not have been presented at his October 19, 2006 hearing.
On September 22, 2008, the Board denied Jiata’s motion to reopen, concluding that he failed to show that his new evidence was material, unavailable and could not have been presented at his original hearing. See 8 C.F.R. § 1003.2(c)(1); Caushi v. Att’y Gen. of U.S., 436 F.3d 220, 231 (3d Cir.2006). The Board reasoned that Jiata had failed to explain adequately why his family members’ statements, describing events in 2004 and 2005, were not available and could not have been presented at his October 19, 2006 hearing, given that they contained information that was clearly discoverable at an earlier time. See Ezeagwuna v. Ashcroft, 325 F.3d 396, 408-10 (3d Cir.2003). It appeared to the Board that Jiata was simply tardy in requesting the evidence from family members. The information about his daughters’ school attendance also could have been obtained earlier through the exercise of diligence. Furthermore, it did not corroborate Jiata’s claim that he had been arrested and beaten by Chinese authorities because of their school attendance in India. Finally, the 2007 Country Report did not, by itself, given the previous adverse credibility determination, establish that Jiata now had a prima facie case for asylum, and, in any event, the pertinent information in the Country Report was previously available.
Jiata has timely petitioned for review of the Board’s decision denying his motion to reopen, and thus we may exercise jurisdiction, 8 U.S.C. § 1252(a)(1). We lack jurisdiction to review any claims regarding the Board’s March 21, 2008 order, because Jiata did not file a timely petition for review of that decision. See 8 U.S.C. § 1252(b)(1); Stone v. Immigration & Naturalization Serv., 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995). Thus, we cannot review the agency’s initial adverse credibility determination.
We review the Board’s denial of a motion to reopen for abuse of discretion. Immigration & Naturalization Serv. v. Do-herty, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992). Under this standard, we will reverse the Board’s decision only if it is arbitrary, irrational, or contrary to law. Sevoian v. Ashcroft, 290 F.3d 166, 174 (3d Cir.2002). “As a general rule, *425 motions to reopen are granted only under compelling circumstances.” Guo v. Ashcroft, 386 F.3d 556, 562 (3d Cir.2004).
In a motion to reopen removal proceedings, the alien must proffer “new facts to be proven at a hearing to be held if the motion is granted,” and the motion “shall be supported by affidavits or other eviden-tiary material.” 8 C.F.R. § 1003.2(c)(1). A motion to reopen proceedings “shall not be granted” unless it appears to the Board that the evidence offered “is material and was not available and could not have been discovered or presented at the former hearing.” Id. See also Caushi, 436 F.3d at 232. Even if prima facie eligibility for the underlying relief of asylum is shown, the Board still has discretion to deny the motion. 8 C.F.R. § 1003.2(a).
The alien carries the heavy burden of demonstrating that his motion should be granted; there are both procedural and substantive hurdles that must be overcome. Shardar v. Att’y Gen. of U.S., 503 F.3d 308, 313 (3d Cir.2007). The Board may deny a motion to reopen proceedings on any of these grounds: (1) it may hold that the alien has failed to establish a prima facie case for the underlying substantive relief; (2) it may conclude that the alien has failed to introduce previously unavailable and material evidence; and (3) if the underlying substantive relief is discretionary, it may decline to consider the first two threshold requirements and, instead, determine that the alien would not be entitled to the requested discretionary grant of relief. Doherty, 502 U.S. at 323, 112 S.Ct. 719 (citing Immigration & Naturalization Serv. v. Abudu, 485 U.S. 94, 104-05, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988)).
We conclude that the Board did not abuse its discretion in denying Jiata’s motion to reopen. Its reasons for denying the motion were not arbitrary, capricious or contrary to law. Jiata argues that the Board engaged in speculation when it found that the statements of family members that he submitted were previously discoverable and available and could have been presented at his hearing. Specifically, he contends that the postmark on the envelope containing them postdated his hearing and, thereby, proves that they were not available on October 19, 2006. (Petitioner’s Brief, at 4-6).
We reject this argument as meritless. Under the regulation, the date on which the statements were mailed is irrelevant. A motion to reopen proceedings “shall not be granted” unless it appears to the Board that the evidence offered “is material and was not available and could not have been discovered or presented at the former hearing.” 8 C.F.R. § 1003.2(c)(1) (emphasis added). The Board could, without abusing its discretion, conclude that the statements and documents were discoverable prior to Jiata’s October 2006 hearing date; that is, that Jiata, had he taken reasonable steps, could have obtained the statements concerning events which transpired in 2004 and 2005. Jiata’s hearing testimony establishes that he had contact with his wife through her brother. He also had contact with his daughters. Jiata did not address in his motion to reopen why he could not have contacted the school earlier and obtained his daughters’ records in advance of his hearing. Since there was contact with both his brother-in-law, Lob-sang, and his daughters, and with his wife through Lobsang, the Board had discretion to conclude that Jiata could have obtained the materials in time for his October 2006 hearing. See Ezeagwuna, 325 F.3d at 409.
In addition, Jiata did not address the Board’s concern that he failed to establish that the school report, which only indicates that his daughters attended the school in November of 2006, corroborated his claim that he was persecuted by Chinese authorities in 2004 and 2005 because of their attendance. The school records *426 submitted in support of the motion to reopen failed to establish that his daughters attended a Tibetan school in India during the relevant time period. See 8 C.F.R. § 1003.2(c)(1) (stating that a motion to reopen shall not be granted unless the evidence offered is “material”); Abudu, 485 U.S. at 104-05, 108 S.Ct. 904 (stating that the Board may deny a motion where the movant has failed to establish a prima facie case for the underlying substantive relief, or failed to introduce material evidence). Further, Jiata he did not show that the information in the 2007 Country Report about the treatment of Tibetans in China differed in a material way from the information contained in the 2005 Country Report. See id. Both reports, in fact, provide similar information concerning the Chinese government’s serious human rights abuses against Tibetans. Accordingly, the Board acted within its discretion in concluding that reopening Jiata’s removal proceedings was not warranted. Doherty, 502 U.S. at 823, 112 S.Ct. 719; Abudu, 485 U.S. at 104-05, 108 S.Ct. 904.
We will deny the petition for review.

. The initials TAR stand for the Tibet Autonomous Region.